**REDACTED COPY**



FILED
APR 11 2016
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

### REDACTED
### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR ARREST

### INTRODUCTION

I, Jack H. Faddis Jr., being duly sworn, depose and state as follows:

### EXPERIENCE AND TRAINING

2:16MJ174

1. I, Jack H. Faddis Jr., (hereinafter "your affiant"), am a Special Agent of the Drug Enforcement Administration (DEA) and have been assigned to the DEA Norfolk Resident Office (NRO) in Norfolk Virginia, since September 21, 2002. Since that time, your affiant has participated in numerous narcotics investigations involving the illegal manufacture, possession, sale, distribution and importation of many different types of controlled substances, as well as the commission of illegal financial transactions designed to conceal drug trafficking proceeds and promote drug trafficking activity.

2. Prior to joining DEA, your affiant was employed with the Chesapeake, Virginia, Police Department from November 1993 until September 2002. Prior to that, your affiant was employed with the Norfolk, Virginia International Airport Police Department from February 1991 until November 1993. During his employment with the Chesapeake Police Department from February 1999 until September 2002, your affiant was assigned as a sworn Task Force Officer with the DEA in the Norfolk Resident Office. During this time, your affiant participated in numerous narcotics investigations involving the illegal manufacture, possession, sale, and distribution of illegal controlled substances. Your affiant has completed extensive training emphasizing narcotic investigations and enforcement, to include training on laundering of drug proceeds.

3. Your affiant is familiar with the facts and circumstances of this investigation as a result of information received by your affiant and summarized in reviewed reports. Your affiant has compiled information derived from discussions and interviews with experienced law enforcement officers and agents from the Virginia State Police Eastern Shore Drug Task Force (ESDTF). This affidavit is submitted for the purpose of establishing probable cause in support of the attached criminal complaint and does not contain the entire scope of the investigation. Based upon my experience and training, I know the following:

## FACTS SUPPORTING PROBABLE CAUSE

4. In or about August, 2012, Group 27 of the Drug Enforcement Administration's Norfolk Resident Office and the ESDTF initiated an investigation targeting the illegal drug distribution activities of Michael MATTOS. MATTOS and his associates operated from Bronx, New York to supply cocaine to the Eastern Shore area of Virginia within the Eastern District of Virginia. MATTOS is believed to be responsible for distributing multiple kilogram quantities of cocaine.

5. Cooperating Witnesses (CWs), who are familiar with the Drug Trafficking Organization (DTO) report that MATTOS has supplied cocaine to the Eastern Shores of Virginia since 2009. MATTOS has been known to sell kilogram quantities of cocaine to an individual (CW-1) who transported the cocaine to the Eastern Shore of Virginia to sell for a profit.

6. On September 9, 2013, agents were able to identify and arrest an individual hereinafter referred to as CW-1. Agents also executed a search warrant at CW-1's residence located on the Eastern Shore of Virginia. During the search, agents recovered approximately twelve (12) ounces of cocaine, $18,000 United States currency, and two firearms. CW-1 was charged and later convicted in the Eastern District of Virginia for conspiracy to distribute five or

more kilograms of cocaine and 280 or more grams of cocaine base. CW-1 agreed to cooperate and provide information regarding his/her cocaine DTO. CW-1 advised that he/she began selling large quantities of cocaine on the Eastern Shore of Virginia since late 2008 or early 2009. CW-1 stated that he/she sold cocaine to several individuals. CW-1 advised that in 2009, he/she distributed on average nine to twelve (9-12) ounces of cocaine weekly on the Eastern Shore. CW-1 added that in 2010, 2011, and up until May 15, 2012, he/she distributed on average eighteen (18) ounces of cocaine weekly on the Eastern Shore of Virginia. CW-1 stated that in or around the summer of 2012, he/she sold approximately three (3) kilograms weekly for approximately one (1) month to an individual. CW-1 advised that in 2013, he/she sold approximately eighteen (18) ounces of cocaine weekly for approximately five (5) months until his/her arrest on September 9, 2013. CW-1 stated that his/her SOS for all the cocaine previously mentioned was Michael Williams (also known as Michael MATTOS) from Bronx, New York. Michael Williams will be referred to as his true name Michael MATTOS. CW-1 advised that during his/her time on the Eastern Shore of Virginia, he/she traveled to New York, New York on a regular basis and purchase kilogram quantities of cocaine from Michael MATTOS. CW-1 advised that he/she transported the cocaine back to Virginia to sell for a profit.

7. In February 2016, your affiant was contacted by another cooperating witness hereinafter referred to as CW-2. CW-2 advised that while in prison, CW-1 made telephonic contact with Michael MATTOS to potentially arrange for a cocaine delivery to the Eastern Shore of Virginia intended to be accepted by CW-2. Under direction and control of agents, CW-2 began making consensually recorded telephone calls to Michael MATTOS to negotiate and arrange the delivery and purchase of approximately one and one half (1½) kilograms of cocaine and nine (9) ounces of cocaine base. There have been approximately 80 completed consensually

recorded conversations between CW-2 and Michael MATTOS. Michael MATTOS' cellular telephone number is ███████████. During some of these recorded conversations, MATTOS has instructed CW-2 on rules of drug trafficking and how to avoid law enforcement detection. MATTOS recently agreed to transport the cocaine and cocaine base to the Eastern Shore of Virginia to sell to CW-2. MATTOS also advised that he would hire a driver for $1,200 to transport the cocaine and he (MATTOS) would travel to Virginia in a separate vehicle. A recent recorded conversation captured MATTOS, CW-2, and a third unknown co-conspirator discussing potential locations on the Eastern Shore to deliver the cocaine. The unknown co-conspirator on the recorded three way conversation was the probable hired driver to transport the cocaine.

8. On April 8, 2016, CW-2 placed another consensually recorded telephone call to MATTOS and advised that he/she had collected all the money needed to purchase the cocaine. MATTOS advised that they would be on the way to Virginia. Agents calculated MATTOS' estimated time of arrival and established surveillance on Route-13 from Maryland to Exmore, Virginia. At 5:03 p.m., CW-2 received a call from MATTOS who advised CW-2 to get a hotel room and call him. Under the direction of agents, CW-2 rented a hotel room at the Hampton Inn in Exmore, Virginia as previously discussed in in an earlier recorded conversation between CW-2 and MATTOS. CW-2 texted MATTOS and stated that a room was rented. At 6:06 p.m., CW-2 received a call from MATTOS, who advised that when he arrives at the hotel room, he would not go straight inside. MATTOS instructed CW-2 that he/she would have to come downstairs to get him. At approximately 8:00 p.m., members of the Eastern Shore Drug Task Force (ESDTF) and the Worcester County Criminal Enforcement Team (CET) located MATTOS vehicle (black Honda CRV) traveling southbound on Route-13 near the Maryland state line in Virginia. Agents

noticed a rented Volkswagen van following MATTOS. Agents followed the two vehicles for several miles and noticed that both vehicles were traveling at 40 MPH in a posted 55 MPH zone. At 8:19 p.m., CW-2 received the last call from MATTOS who advised that he was pretty close. At approximately 8:40 p.m., agents observed both vehicles pull into the Corner Mart gas station in Painter, Virginia. Agents initiated a traffic stop on both vehicles and detained both drivers. MATTOS produced a fictitious New York driver's license in the name of Michael McNeil. The driver of the rental van was identified as Maribel ORTIZ who is MATTOS' girlfriend and mother of his two children. Also in the rental van was their four year old daughter. Agents noted that ORTIZ was extremely nervous. Agents utilized a narcotics detecting dog which alerted positively to the presence of illegal narcotics in both vehicles. Agents searched both vehicles. Inside MATTOS' Honda agents located a portable trap inside a battery jump box. The trap did not contain any narcotics or currency. Agents then recovered approximately 1½ kilograms of cocaine and nine (9) ounces of cocaine base secreted inside the rear bumper of the rental van. Agents conducted a field test of the seized drugs, and the field test returned a positive indication for cocaine. Agents also determined that ORTIZ rented the van on April 8, 2016. Agents discovered the Honda's GPS navigation last address was set for the Hampton Inn in Exmore, Virginia. Agents also recovered MATTOS' cell phone that was used for all the consensually recorded calls with CW-2. After MATTOS' cell phone was recovered by agents, CW-2 called MATTOS' cell phone and the agents observed it ringing with CW-2's number of the screen.

9. Agents transported MATTOS and ORTIZ to the ESDTF office for interviews. Agents first interviewed ORTIZ and read her Miranda warning at 11:10 p.m. ORTIZ agreed to speak with the agents and first stated that she knew nothing about the cocaine. She stated that

she and MATTOS were going to a funeral in Virginia Beach, Virginia which started at 8:00 p.m. ORTIZ did not know the name of the deceased nor could she explain how she intended to attend an 8:00 p.m. funeral in Virginia Beach, Virginia when they were still on the Eastern Shore after it started. ORTIZ stated that she rented the van this morning as instructed by MATTOS. ORTIZ stated that she went to her child's school this morning with the van for approximately one hour and that MATTOS may have taken the vehicle during that time. ORTIZ had no luggage and advised that she was going to wear the clothes she had on to the funeral. She also advised that they rented the van and drove separately because they had friends that intended to ride back with them to New York.

10. Agents then interviewed MATTOS who still represented himself as Michael McNeil. Agents read the Miranda warnings to MATTOS and he agreed to speak with agents. MATTOS stated that he and ORTIZ were traveling to a funeral in Virginia Beach, Virginia for one of his friends. MATTOS advised that he only knew the deceased as "Will" and did not recall the last name or the time of the service. MATTOS then stated that he knew about the cocaine but it was not his. He stated that another unknown male named "Jay" took the rental van this morning from him and stashed the cocaine in the van. He stated that "Jay" was in another van driving with him and ORTIZ and that the police missed him. Agents observed no other vehicles traveling with MATTOS and ORTIZ during surveillance. MATTOS advised that he and "Jay" arranged the cocaine deal and that he was only making "chump change."

11. Your affiant retrieved a criminal history check on Michael McNeil with date of birth ▇▇▇. The criminal history revealed that Michael McNeil is an alias for Michael MATTOS date of birth ▇▇▇. The criminal history of MATTOS revealed that on 12-11-91,

MATTOS was convicted in Bronx County Supreme Court for felony Criminal Possession of a Controlled Substance with Intent to Sell.

## CONCLUSION

12. Based on the foregoing facts, training, and experience, as well as your affiant's debriefings with cooperating witnesses, your affiant believes that there is sufficient probable cause to charge Michael MATTOS with conspiracy to distribute and possess with the intent to distribute five (5) kilograms or more of cocaine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(A) and twenty eight (28) grams or more of cocaine base, Schedule II controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(B). Your affiant also believes there is sufficient probable cause to charge Maribel ORTIZ with conspiracy to distribute and possess with the intent to distribute five hundred grams (500) grams or more of cocaine and twenty eight (28) grams or more of cocaine base, Schedule II controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(B).

FURTHER YOUR AFFIANT SAITH NOT.

Jack H. Faddis, Jr.
Special Agent, DEA

Sworn and subscribed to before me on this _____ day of April, 2016.

United States Magistrate Judge
Norfolk, Virginia